UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARSHALL TRUCHAN,

      Plaintiff,

vs.

CASE NO. 05-CV-70951
HON. LAWRENCE P. ZATKOFF

MONROE CHARTER TOWNSHIP,

      Defendant.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on May 4, 2006

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendant's Motion for Summary Judgment (Docket #11). Plaintiff has filed a response and the Defendant's reply period has expired. The Court finds that the facts and legal arguments pertinent to the Defendant's Motion are adequately presented in the parties' papers, and the decisional process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted, without this Court entertaining oral arguments. For the reasons that follow, Defendant's Motion for Summary Judgment is GRANTED.[1]

---

[1] On February 13, 2006, the Court issued Plaintiff an Order to Show Cause (Docket #13). For the reasons stated in Plaintiff's response, the Order to Show Cause is hereby dismissed.

## II. BACKGROUND

Plaintiff has owned a piece of property at 15579 Eastwood (the "Property"), Monroe Charter Township ("Defendant"), since 1996. The property had a house on it until January 26, 2005, when Defendant caused the house to be demolished and removed from the Property. To the extent the house was occupied during Plaintiff's ownership, it was occupied by tenants and not the Plaintiff. The following time line highlights the relevant actions of the parties relative to the Property:

| Date | Event |
|---|---|
| November 19, 1996 | Certificate of occupancy issued to Plaintiff and his mother. |
| September 13, 2000 | Mike Black, Defendant's Building Official, receives a complaint on the house from Child Protective Services. |
| September 14, 2000 | Tenant calls Black requesting inspection of the Property. |
| September 20, 2000 | Black meets tenant and Child Protective Service at the Property. Plaintiff is invited but does not attend. Numerous code violations were issued upon inspection. |
| September 25, 2000 | Property is red tagged and posted as a dangerous building. |
| October 23, 2000 | A copy of the field inspector's progress report is mailed to Plaintiff. |
| November 14, 2000 | Plaintiff and his mother meet with Black regarding the code violations. |
| August 1, 2003 | Plaintiff requests and receives another copy of the previous report and an application for a building permit. |
| August 7, 2003 | Plaintiff returns to Defendant offices with application but does not list corrections for all of the violations listed. |
| May 25, 2004 | A letter is sent via certified mail informing Plaintiff that (1) he has 30 days from the date of the letter to secure a building permit to repair the structure, (2) he has 60 days from the issuance of the permit to complete the repairs, and (3) failure to comply with the foregoing will result in Defendant causing the structure to be removed. The letter also notifies Plaintiff that he has 20 days to appeal the decision of the building official. |
| May 26, 2004 | Defendant posts the property as a dangerous structure by writing "condemned" on both the front and rear posting cards that had been previously placed on the structure in September 2000. |
| June 14, 2004 | Plaintiff contacts Black to discuss the code violations in detail. All necessary applications for permits are mailed to Plaintiff. |

| | |
|---|---|
| June 18, 2004 | Plaintiff files a building permit application with Defendant, wherein he asks for a homeowner's permit. |
| June 23, 2004 | Plaintiff is notified in writing of Defendant's denial of the June 18, 2004 permit application and the reasons for the denial. The letter notes that the deadline for appealing the decision of the building official passed without action. Black agrees to extend the deadline for obtaining a building permit until June 30, 2004. |
| June 25, 2004 | Plaintiff sends a letter to Defendant regarding denial of his permit application. |
| June 29, 2004 | Black meets with Plaintiff and his contractor, Brian Walbridge, to discuss the permit application and code violations. Sections from the Michigan Rehabilitation Code and International Property Maintenance Codes were read to the parties. Written copies of the codes were offered to Plaintiff and Walbridge and were rejected. |
| July 20, 2004 | Defendant's officials meet with Walbridge at the Property. The repairs are discussed in detail, the repairs needed are agreed upon and Walbridge agrees to perform the necessary repairs within 45 days of the issuance of the permit. |
| July 21, 2004 | Defendant receives a fax from Walbridge containing the 28 items he agreed to repair. |
| July 26, 2004 | Walbridge goes to Defendant for a permit but lacks the fee. Black again discusses with Walbridge the parties' agreement to complete the repairs within 45 days. |
| July 29, 2004 | Walbridge signs the building permit application and pays the permit fee. Defendant issues permit to Walbridge. Permit states that work must be completed within 45 days. |
| August 13, 2004 | Walbridge requests an inspection. Black views the Property but is not able to view footer work because it was covered prior to inspection. |
| August 27, 2004 | Defendant's building official inspects the Property, notices code violations in the work being performed and posts a stop work order. |
| September 3, 2004 | Defendant leaves message for Walbridge to contact the Defendant. |
| September 15, 2004 | Defendant leaves a second message for Walbridge to contact Defendant regarding the stop work order and the fact the 45 days specified in the building permit had expired and the repairs were not complete. |
| November 22, 2004 | Defendant building official viewed the Property and noted that there had been no progress. Notice for demolish bid sent to Monroe Evening News for publication. |

| | |
|---|---|
| December 1, 2004 | Legal notice is posted in Monroe Evening News asking for bids to demolish the house. |
| December 3, 2004 | Letter and copy of publication mailed to Plaintiff via certified mail notifying him of his violation of the building permit and the orders issued by Black. |
| December 6, 2004 | Plaintiff calls Black regarding the December 3, 2004 letter. Plaintiff was advised to attend the December 21, 2004, meeting of the Defendant's Board. |
| December 21, 2004 | Defendant Board meeting is held. Black, Plaintiff and Walbridge attend the meeting. Bids for demolition were opened. Motion passed giving Plaintiff until January 11, 2005 to post cash bond and secure a new building permit or the house will be demolished. |
| December 27, 2004 | Letter sent by Defendant to Plaintiff regarding the motion adopted by the Defendant Board. |
| January 20, 2005 | Demolition permit issued to Erie Demolition & Salvage to demolish the house. |
| January 25, 2005 | Summons and complaint filed by Plaintiff in Monroe County Circuit Court to stop demolition and request a temporary restraining order. No TRO was issued. |
| January 26, 2005 | Erie Demolition & Salvage removes the structure from the Property. Defendant's Sheriff Department had to be called to remove Plaintiff's mother and two men from the Property. |
| March 2, 2005 | Claim of lien on the Property for the cost of demolition. |

On the basis of the foregoing events, Plaintiff filed a Complaint in this Court on March 11, 2005, alleging that Defendant (1) violated Michigan law when in trespassed by entering the Property without consent and causing injury to the land by demolishing the house, and (2) violated Plaintiff's federal constitutional rights by failing to afford him procedural due process and by taking his property. The Court dismissed Plaintiff's state law claim on April 15, 2005.

### III. LEGAL STANDARD

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings, combined with any affidavits in support, show that no genuine issue as

4

to any material fact remains and that the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)(citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324. The nonmoving party must do more than show that there is some metaphysical doubt as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## IV. ANALYSIS

**A.     Due Process Claim**

Plaintiff has alleged that his Fourteenth Amendment right to due process was violated when Defendant demolished his house without giving him adequate notice or an opportunity to be heard.

> To establish a procedural due process claim under 42 U.S.C. §1983, plaintiffs must establish three elements: (1) that they have a constitutionally protected life, liberty, or property interest; (2) that they were deprived of this interest within the meaning of the due process clause; and (3) that the state did not afford them adequate procedural rights prior to depriving them of that protected interest.

*Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999). Defendant does not contest that Plaintiff had a protected interest in the house or that its demolition deprived Plaintiff of his interest in the

structure (elements (1) and (2) above). Defendant does contend, however, that Defendant more than adequately afforded Plaintiff due process rights required under the U.S. Constitution.

   1.   *Michigan Construction Code*

Under the Michigan Construction Code, Sections 107.2 and 108.3, the owner of a property must be provided with notice of violation(s) and notice of condemnation, respectively, before any action can be taken against the property owner. The notice of violation must (a) be in writing, (b) include a description of the real estate, (c) include a statement of the violations and why the notice is being issued, (d) include a correction order allowing a reasonable amount of time to effectuate repairs, and (e) inform the property owner of the right to appeal. Then, the notice must be served either personally or by certified or first class mail addressed to the owner's last known address. Section 107.3. Prior to condemnation, a notice in the form prescribed for notice of violation is required. Section 108.3. Notice of the condemnation must be served in the same manner as set forth in Section 107.3 and also requires that the notice of condemnation be "posted in a conspicuous place in or abut the structure affected by such notice." In addition, a placard saying "condemned" must be posted on the premises if the violations are not remedied. Section 108.4.

Plaintiff argues that none of the five prongs set forth above were met in this matter, as no violations (tickets) were ever issued to Plaintiff. The Court disagrees.

   2.   *Notice of Violations*

On at least two occasions (September 25, 2000 and May 26, 2004), Defendant "red tagged" the Property and posted the house as a dangerous building. On at least two occasions (November 14, 2000 and August 1, 2003), Plaintiff met with Black and had in his possession a list of the violations Black noted at the Property. Then, on May 25, 2004, Black sent Plaintiff a letter that included the following information:

   A.   "Re: Property I.D. #5812-1050174-00, 15579 Eastwood Dr., Monroe, MI 48161"

   B.   "I am now ordering you to either remove this unsafe structure or repair as the State Law and it's [sic] Building Code would require. . . . As you may recall, I did post your site 'unsafe and dangerous' on 9/25/00. You followed this

6

      with a note to me intending to perform the prescribed repairs."

  C. "You now have 30 days from the date of this letter, or no later than 6/25/04, to secure a permit (a licensed contractor must secure this permit) to repair or remove this structure."

  D. "Once a permit is validated, either the repair work or demolition work, must be completed with 60 days of the permit issuance, the progress of which will be monitored each week."

  E. "If you wish to make an appeal of this letter, we must receive your application, the reasons for your appeal, and all necessary information in this office no later than June 14, 2000 (20 days of this letter). If you ignore this notice, I will have no other choice but to order this building's removal as soon as possible."

On the basis of the foregoing, the Court finds that notice of the violations (1) is in writing, (2) provides a description of the real estate, (3) states the violations and the reason the notice is being issued (particularly in light of the list of violations provided to Plaintiff on at least two prior occasions, (4) includes a correction order in that it directs the owner to either remove or repair the structure within a reasonable amount of time (this matter dragged on for over four years and each time a deadline was set, Plaintiff agreed to it), and (5) informs the owner of his appeal rights.

  Accordingly, the Court finds that Defendant satisfied the requirements of Section 107.2 and Section 107.3 with respect to Plaintiff's Property.

  *3. Notice of Condemnation*

  Defendant provided Plaintiff with notice of condemnation on many occasions. For instance, in the May 25, 2004, letter (among other times), Defendant warned that Plaintiff's failure to rectify the conditions at the Property would result in the demolition of the house thereon. Then, on December 3, 2004, Defendant sent Plaintiff and Walbridge a letter notifying them that the house had not been repaired as required, that the building permit issued in July had long since expired, and that Defendant was advertising in the local paper for removal and clean-up of the house on the Property. Finally, in close proximity to the timing of the demolition, Plaintiff was notified, both in person at the December 21, 2004, Board meeting of the Defendant, and via the December 27, 2004, letter sent by Defendant to Plaintiff, that condemnation was imminent if certain conditions were not

met. Both the discussion at the meeting and substance of the letter informed Plaintiff that (a) he needed to (initially) post a cash bond of $7,600 with Defendant by January 10, 2005, and secure a new building permit from Defendant by January 11, 2005, and (b) his failure to do so would result in Defendant moving forward to have the house on the Property demolished. As previously noted, Black went to the Property on May 26, 2004 and wrote "condemned" on the red tags previously posted.

On the basis of the foregoing, the Court finds that Defendant satisfied the requirements of Section 108.3 and Section 108.4 with respect to Plaintiff's Property.

*4. Conclusion*

On the basis of the foregoing, the Court finds that Defendant provided Plaintiff with more than adequate notice and opportunity to be heard with respect to the condemnation and demolition of the house on the Property. As indicated by many of the entries on the timeline set forth in Section II, Plaintiff had been aware of the problems associated with the house on the Property since at least October 2000. Written notices of the code violations on the Property were provided on several occasions, as were notices that failure to remedy the violations would result in condemnation of the house. Finally, Defendant gave Plaintiff multiple chances to remedy the violations, even after Plaintiff failed to meet deadlines to which Plaintiff had agreed.

Accordingly, the Court holds that, as a matter of law, Defendant did not violate Plaintiff's Fourteenth Amendment right to procedural due process. Defendant's Motion for Summary Judgment is therefore GRANTED with respect to Plaintiff's due process claim.

**B. Takings Claim**

Plaintiff also has asserted a takings claim pursuant to the Fifth Amendment to the U.S. Constitution because Defendant demolished his house without compensation. As the Sixth Circuit has made clear, however:

> A claim that a government regulation constitutes a taking of property in violation of the fifth amendment[, however,] will not be ripe for adjudication "until the government entity charged with implementing the regulations has reached a final decision regarding the application

8

of the regulations to the property at issue."

*Seguin v. City of Sterling Heights*, 968 F.2d 584, 587 (6th Cir. 1992)(quoting *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985)). If a state provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until he has used the procedure and been denied just compensation. *See Williamson*, 473 U.S. at 193, 197 (rejecting takings claim because plaintiff had not shown that the inverse condemnation procedure was unavailable or inadequate, and holding that until plaintiff utilized that procedure, its takings claim was premature).

"In Michigan, the doctrine of inverse condemnation is long recognized and constitutionally established." *Macene v. MJW, Inc.*, 951 F.2d 700, 704 (6th Cir. 1991). *See* MICH. CONST., art. 10, §2. "Michigan courts have held that inverse condemnation is a remedy for a taking and that a 'taking' of private property for public use is not restricted to cases involving absolute conversion of private property, but also includes cases where the value of the property is destroyed by the action of the government or where the owner is excluded from the use or enjoyment of his property." *Macene*, 951 F.2d at 704.

Plaintiff raised a takings claim for the first time in this action. There is no indication on the record that Plaintiff previously pursued a state inverse condemnation claim. Accordingly, since Plaintiff has not availed himself of the Michigan inverse condemnation procedures, or demonstrated to the Court the inadequacy of those procedures, Plaintiff's "takings" claim is not yet ripe. The Court therefore GRANTS Defendant's Motion for Summary Judgment with respect to Plaintiff's takings claim.

**C.     Trespass Claim**

The parties both address the state law Trespass claim set forth by Plaintiff at Count I of his Complaint. In its review of the docket in this case, however, the Court notes that the Trespass claim, Count I of Plaintiff's Complaint, was dismissed without prejudice by this Court on April 15, 2005 (Docket #3). As this claim is not currently before this Court, it is not addressed herein.

## V. CONCLUSION

Accordingly, and for the reasons set forth above, the Defendant's Motion for Summary Judgment is GRANTED. As the grant of Defendant's Motion for Summary Judgment resolves all of the claims before this Court, Plaintiff's Complaint is hereby DISMISSED. For the reasons set forth above, Plaintiff's Fourteenth Amendment deprivation of procedural due process claim is DISMISSED WITH PREJUDICE, and Plaintiff's Fifth Amendment Takings claim is DISMISSED WITHOUT PREJUDICE. Judgment shall be entered accordingly.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: May 4, 2006

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on May 4, 2006.

s/Marie E. Verlinde
Case Manager
(810) 984-3290